# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| MARILYN ZMIGROCKI, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 12 C 9697 |
| | ) |
| COOK COUNTY, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendant Cook County's (County) motion for summary judgment. For the reasons stated below, the motion for summary judgment is granted in its entirety.

## BACKGROUND

Plaintiff Marilyn Zmigrocki (Zmigrocki) is allegedly a Caucasian woman who was employed for the Cook County Department of Supportive Services at the age of 67 as an Administrative Assistant. On September 2, 2009, Zmigrocki was allegedly informed that her employment was being terminated. According to Zmigrocki, after her termination a younger African-American employee, age 54, took over her duties and was paid a similar amount. Zmigrocki includes in her complaint a disparate

impact claim brought under the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. § 621 *et seq.* (Count I), a disparate treatment claim brought under the ADEA (Count I), a claim brought under Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000e *et seq.* alleging race discrimination and disparate impact (Count II), and a claim brought under Title VII alleging race discrimination and disparate treatment (Count II). The County moves for summary judgment on all claims.

## LEGAL STANDARD

Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, reveals that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Smith v. Hope School*, 560 F.3d 694, 699 (7th Cir. 2009). A "genuine issue" of material fact in the context of a motion for summary judgment is not simply a "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000). In ruling on a motion for summary judgment, the court must consider the record as a whole, in the light most favorable to the non-moving party, and draw all reasonable inferences in favor of the non-moving party. *Anderson*, 477 U.S. at 255; *Bay v.*

*Cassens Transport Co.*, 212 F.3d 969, 972 (7th Cir. 2000).

**DISCUSSION**

I.  Disparate Impact Claims

The County contends that Zmigrocki has not pointed to sufficient statistical evidence to support her disparate impact claims.  A plaintiff can proceed under Title VII or the ADEA under a disparate impact theory "when an employer has adopted a particular employment practice that, although neutral on its face, disproportionally and negatively impacts members of" a protected class.  *Cerutti v. BASF Corp.*, 349 F.3d 1055, 1067 (7th Cir. 2003)(internal quotations omitted)(quoting *Bennett v. Roberts*, 295 F.3d 687, 698 (7th Cir. 2002)); *see also Farrell v. Butler University*, 421 F.3d 609, 616 (7th Cir. 2005)(stating that "[u]nder a disparate impact theory, an employer is held liable when a facially neutral employment practice disproportionately impacts members of a legally protected group").  In order to establish a prima facie case under the disparate impact theory, "a plaintiff must isolate and identify the specific employment practices that are allegedly responsible for any observed statistical disparities."  *Cerutti.*, 349 F.3d at 1067.  The plaintiff must also present "statistical evidence of a kind and degree sufficient to show that the practice in question has caused the exclusion of applicants for jobs or promotions because of their membership in a protected group."  *Puffer v. Allstate Ins. Co.*, 675 F.3d 709, 717 (7th Cir. 2012)(internal quotations omitted)(quoting *Watson v. Fort*

*Worth Bank & Trust*, 487 U.S. 977, 994-95 (1988)). If the plaintiff presents sufficient statistical evidence, the burden shifts "to the defendant-employer to demonstrate that the employment practice is job related for the position in question and consistent with business necessity." *Puffer*, 675 F.3d at 717 (internal quotations omitted)(quoting 42 U.S.C. § 2000e–2(k)(1)(A)).

A. Availability of ADEA Disparate Impact Claim

The County argues that a plaintiff cannot base an ADEA claim on a disparate impact theory. The County cites to *Miller v. City of Indianapolis*, 281 F.3d 648, 651 (7th Cir. 2002) in which the Court stated that it does "not recognize disparate impact claims in this circuit under the Age Discrimination in Employment Act." *Id.* at 651; (Reply 12-13). However, in 2005, in *Smith v. City of Jackson, Miss.*, 544 U.S. 228 (2005), the Supreme Court held that a plaintiff could pursue an ADEA claim under a disparate impact theory. *Id.* at 234. Thus, Zmigrocki can pursue and ADEA claim under a disparate impact theory.

B. Specific Employment Practices

Zmigrocki contends that a County policy had a disproportionate impact on older employees and Caucasian employees. (Ans. SJ 4). It was Zmigrocki's burden to point to a specific employment practice in her response to the instant motion, but Zmigrocki offers little more than a vague reference to a "political hiring/firing policy." (Ans. SJ 4). Zmigrocki also references paragraph 27 of her statement of

4

additional facts, which also fails to delineate any specific employment policy that is the culprit for an alleged disproportionate impact on older and Caucasian workers. (Ans. 4); (SAF Par. 27). It was Zmigrocki's burden to isolate and define the specific employment practice at issue, and the court will not speculate as to what practice Zmigrocki seeks to rely upon to support her disparate impact claims. Zmigrocki's general references to a hiring process are not sufficient to satisfy her burden to "isolate and identify" a specific employment practice. *See Bennett v. Roberts*, 295 F.3d 687, 698 (7th Cir. 2002)(stating that "[t]o establish a prima facie case of disparate impact, a plaintiff first must isolate and identify the specific employment practices that are allegedly responsible for any observed statistical disparities")(internal quotations omitted)(quoting *Vitug v. Multistate Tax Comm'n*, 88 F.3d 506, 513 (7th Cir. 1996)); *see also Puffer*, 675 F.3d at 717 (stating that "it is not enough to simply allege that there is a disparate impact on workers, or point to a generalized policy that leads to such an impact")(internal quotations omitted)(quoting *Smith v. City of Jackson*, 544 U.S. 228, 241 (2005)). Zmigrocki has thus failed to meet her burden to point to a specific employment practice to support her disparate impact claims.

    C.  Statistical Evidence

Zmigrocki contends that she has statistical evidence showing that a County policy has a disproportionate impact on older employees and Caucasian employees. The only statistical evidence pointed to by Zmigrocki is a chart (Chart) that shows a

breakdown of employees who were discharged by Cook County Board President Todd Stroger (Stroger) from August 1, 2009 through December 31, 2009. (SAF Par. 27); (Ans. SJ 4, 12). The Chart lists how many employees of each age group were discharged, and how many of certain races were discharged. (SAF Par. 27). The Chart and statistics identified by Zmigrocki fail, however, to provide evidence as to the pertinent issue in the disparate impact context. For a disparate impact claim, a plaintiff must show a disproportionate impact on certain groups of employees. *Cerutti*, 349 F.3d at 1067. The mere fact that more Caucasian employees were discharged than African-American employees does not necessarily mean that there was a disproportionate number of Caucasian employees discharged. If, for example, there were more Caucasian employees in the labor pool with the County, then proportionately it would be expected that a larger number of Caucasian employees would be discharged. Zmigrocki has been allowed to conduct discovery in this case and has failed to fill this gap in the statistics that would give the Chart any meaningful impact on the pertinent inquiry. *See Diadenko v. Folino*, 741 F.3d 751, 757-58 (7th Cir. 2013)(stating that "summary judgment is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events")(internal quotations omitted)(quoting *Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008)); *see also, e.g., Anderson v. National R.R. Passenger Corp.*, 2006 WL 931699, at* 6 (N.D. Ill. 2006)(stating that "[w]hile it is true that the Chicago call center was proportionally more African American than the other two centers, it is equally

6

undisputed that the each of other two centers employed a numerically larger number of African American employees than did Chicago"); *Hansel v. Prairie Industries, Inc.*, 2014 WL 5393924, at *14 (W.D. Wis. 2014)(looking at the percentages of certain groups as opposed to the raw numbers in each group). The County also correctly points out that the Chart is not sufficient to support the disparate impact claims because Zmigrocki failed to lay a proper foundation for the Chart, the Chart is based on an unauthenticated document, the Chart arbitrarily excludes certain information, and the Chart includes terminations over a five-month period without showing how the other terminations are related to Zmigrocki's termination. (Reply 15). Zmigrocki has thus failed to meet her burden to present statistical evidence to support her disparate impact claims. Based on the above, the County's motion for summary judgment on the disparate impact claims is granted.

II. ADEA Disparate Treatment Claim

The County moves for summary judgment on the ADEA disparate treatment claim. A plaintiff that is bringing an ADEA discrimination claim can seek to defeat a defendant's motion for summary judgment under the direct or indirect method of proof. *Zayas v. Rockford Memorial Hosp.*, 740 F.3d 1154, 1157-58 (7th Cir. 2014); *see also Ripberger v. Corizon, Inc.*, 773 F.3d 871, 880 (7th Cir. 2014)(explaining that "[a]s with her Title VII claims," the plaintiff could "avoid summary judgment by providing either direct or circumstantial evidence that would allow a reasonable juror to infer that her employer acted for discriminatory reasons"). A plaintiff pursuing an

ADEA claim "must produce evidence from which a jury could infer that her age 'was a but-for cause of [her] termination.'" *Ripberger*, 773 F.3d at 880 (quoting *Fleishman v. Cont'l Cas. Co.*, 698 F.3d 598, 603 (7th Cir. 2012)). In the instant action, Zmigrocki argues that she can proceed under the direct and indirect method of proof. (Ans. SJ 7, 12).

    A. Direct Evidence Method

Under the direct method of proof, a plaintiff bringing an ADEA claim must point to sufficient direct evidence or a "'convincing mosaic' of circumstantial evidence," that is connected "such that a reasonable juror could infer the employer acted for discriminatory reasons." *Fleishman*, 698 F.3d at 603; *see also Hutt v. AbbVie Products LLC*, 757 F.3d 687, 691 (7th Cir. 2014)(indicating categories of circumstantial evidence that typically are used to proceed under the direct evidence method of proof); *Teruggi v. CIT Group/Capital Finance, Inc.*, 709 F.3d 654, 661 (7th Cir. 2013)(internal quotations omitted)(quoting *Van Antwerp v. City of Peoria, Ill.*, 627 F.3d 295, 298 (7th Cir. 2010))(stating that in the direct evidence method context a plaintiff must show "that the employer's stated reason or the employment decision was a lie—not just an error, oddity, or oversight" and that "[a]n unwise employment decision does not automatically rise to the level of pretext"). Zmigrocki argues that the statistics that she has pointed to "conclusively" show that "(a) whites are terminated at a rate almost seven (7) times higher than blacks and (b) those above age forty are twenty-four (24) times more likely to be terminated than

their younger peers." (Ans. SJ 12). However, as explained above, the data and Chart relied upon by Zmigrocki is riddled with substantive and procedural deficiencies and does not establish what Zmigrocki claims. For example, although the Chart shows that approximately seven times as many Caucasian employees were discharged as African-American employees, such data would not indicate any disproportionate disparity if there were seven times more Caucasian employees than African-American employees working at the County. Zmigrocki also contends that the County offered pretextual reasons for the termination of Zmigrocki. As will be explained below in regard to the indirect method of proof, Zmigrocki has failed to point to evidence indicating that the reason given for the termination of Zmigrocki's employment was a pretext.

Zmigrocki also contends that certain notations on her personnel action form indicate shifting reasons for her discharge and thus an attempt to hide unlawful discrimination. Zmigrocki points out that the personnel action form indicates that the reason listed for her termination was "Layoff" and that "LO" was written in a space on the form. (D Ex. 7). In 1972, the County entered into a consent decree known as the Shakman Decree, which "enjoined the Shakman defendants from conditioning, basing or knowingly prejudicing or affecting any term or aspect of governmental employment, with respect to one who is at the time a governmental employee, upon or because of any political reason or factor." *Tomczak v. City of Chicago*, 765 F.2d 633, 635 (7th Cir. 1985). However, the judgment and amended judgment entered with the Shakman decree exempted certain employees from the protections of the

Shakman decree. *See id.* (stating that "[t]he new judgment exempted approximately 1,200 city employees from the application of the Shakman decree"); *Shakman v. Democratic Organization of Cook County*, 920 F. Supp.2d 881, 886 (N.D. Ill. 2013)(referencing the "Shakman Exempt List" for County employees); *Shakman v. Democratic Organization of Cook County*, 569 F. Supp. 177, 183 (N.D. Ill. 1983)(listing certain exempt County positions). The undisputed record reflects that Stroger chose to layoff Zmigrocki because she was on the exempt list.

The County explains that the form needed a code for computer entry and that "LO" was simply a code that could be used for a political layoff. The County correctly points out that Zmigrocki could be laid off for political reasons. The form does not indicate that Zmigrocki was being laid off for reasons other than political reasons. Zmigrocki was not being fired for poor performance and thus the use of the word "Layoff" could conceivably have been used for the reason for her termination. Zmigrocki asserts that certain County employees had orally indicated other reasons for her termination, but Zmigrocki has not shown that such other individuals made the decision to terminate Zmigrocki's employment. Stroger consistently indicated at his deposition that he wanted to find a job for someone for political reasons, that he asked for the list of exempt employees, and that he chose Zmigrocki because she was on that list. (Stro. Dep. 20-26). Zmigrocki has not pointed to sufficient evidence to call into question Stroger's claims. Thus, the use of the word "Layoff" on Zmigrocki's personnel action form does not indicate an intent to discriminate against Zmigrocki because of her age. Even when considering all of the evidence in its

10

totality, Zmigrocki has failed to point to sufficient evidence to proceed under the direct evidence method.

	B. Indirect Evidence Method

Under the indirect evidence method of proof a plaintiff bringing an ADEA claim must first establish a *prima facie* case. *Naik v. Boehringer Ingelheim Pharmaceuticals, Inc.*, 627 F.3d 596, 599-00 (7th Cir. 2010). If the plaintiff establishes a *prima facie* case, the burden shifts to the defendant to provide a "legitimate, nondiscriminatory reason for the adverse employment action." *Id.* If the defendant offers such a reason, the burden shifts to the plaintiff to show that the given reason is a pretext. *Id.*

	1. *Prima Facie* Case

For an ADEA *prima facie* case, the plaintiff must establish: (1) that "[s]he is a member of the protected class," (2) that "[s]he was performing well enough to meet h[er] employer's legitimate expectations," (3) that "[s]he suffered an adverse employment action," and (4) that "similarly situated employees not in h[er] protected class were treated more favorably." *Id.* The County argues that Zmigrocki cannot show that similarly-situated employees outside the protected class were treated more favorably than Zmigrocki. In order to be a similarly-situated employee in the context of establishing a *prima facie* case, the employee "must be directly comparable to" the plaintiff "in all material respects." *Zayas*, 740 F.3d at 1158 (internal quotations

omitted)(quoting *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 680 (7th Cir. 2002)); *see also Coleman v. Donahoe*, 667 F.3d 835, 841 (7th Cir. 2012)(stating that "the similarly-situated inquiry is flexible, common-sense, and factual" and that the pertinent inquiry is whether there are "enough common features between the individuals to allow a meaningful comparison")(internal quotations omitted)(quoting *Humphries v. CBOCS West, Inc.*, 474 F.3d 387, 405 (7th Cir. 2007)). In addition, for an ADEA claim, to satisfy the similarly-situated prong of the *prima facie* case, the plaintiff must establish that "similarly situated, substantially younger employees were treated more favorably" than the plaintiff. *Fleishman*, 698 F.3d at 609 (internal quotations omitted)(quoting *Franzoni v. Hartmarx Corp.*, 300 F.3d 767, 771-72 (7th Cir. 2002)); *see also Tubergen v. St. Vincent Hosp. and Health Care Center, Inc.*, 517 F.3d 470, 475 (7th Cir. 2008)(stating that a plaintiff must establish that "other similarly situated employees who were not members of his protected class or were substantially younger were treated more favorably"); *Jordan v. City of Gary, Ind.*, 396 F.3d 825, 835 (7th Cir. 2005)(stating that a plaintiff must show that "similarly situated, substantially younger. . . employees were treated more favorably").

Zmigrocki points to only one employee in an attempt to meet the similarly-situated employee prong of her *prima facie* case. Zmigrocki contends that she was replaced by Shirley Coleman (Coleman) who Zmigrocki contends is African-American and is substantially younger than Zmigrocki. (Ans. SJ 7). However, it is undisputed that Coleman was placed in Zmigrocki's position when Coleman was 54 years old. (R SF Par. 5). Coleman thus was within the protected class of the ADEA.

In addition, Coleman at age 54 should not be considered substantially younger than Zmigrocki who was 67 years old. While the Seventh Circuit has indicated that a ten-year age difference can be a guidepost in assessing whether an employee is substantially younger, the Seventh Circuit has not made any *per se* rule to follow. *See, e.g., Bennington v. Caterpillar Inc.*, 275 F.3d 654, 659 (7th Cir. 2001). If in this case, Zmigrocki was 54 years old and an individual who was 41 years old was hired to replace her, such a thirteen-year disparity might suggest age discrimination. The hiring of a 54-year-old woman, however, does not suggest an intent to discriminate against older workers. Zmigrocki has thus failed to establish a *prima facie* case.

    2. Pretext

Under the indirect evidence method, to show a pretext, the plaintiff must show that the defendant gave "a dishonest explanation, a lie rather than an oddity or an error." *Everroad v. Scott Truck Systems, Inc.*, 604 F.3d 471, 478-79 (7th Cir. 2010)(internal quotations omitted)(quoting *Bodenstab v. County of Cook*, 569 F.3d 651, 657 (7th Cir. 2009)). As mentioned above, Zmigrocki presents the court with certain statistics. However, as explained above, such statistics are of limited relevance and do not support Zmigrocki's arguments. In addition, for disparate treatment cases dealing with specific individuals, statistics are of limited importance. *Rummery v. Illinois Bell Telephone Co.*, 250 F.3d 553, 559 (7th Cir. 2001)(stating that "while statistics may be used to demonstrate that the employer's proffered reason for discharge is pretextual, standing alone they are not likely to establish a

case of individual disparate treatment"). In the instant action, it is undisputed that Coleman, who Zmigrocki contends took over her duties, was 54 years old. Such a decision to hire a 54-year-old person does not indicate an animus against older workers. Nor is there any indication that Zmigrocki was discharged in order to hire a younger less experienced employee and pay less in salary for the position. Zmigrocki herself contends that Coleman was paid approximately the same amount as Zmigrocki.

    Nor is there anything suspicious in the reasoning given for her termination. Although Zmigrocki contends that a few oral statements were made as to the reasons for Zmigrocki's employment, the undisputed evidence shows that it was Stroger who made the decision to discharge Zmigrocki and that he chose her because he believed she was on the exempt list. The County contends that Zmigrocki was a political employee and was aware that she was serving in her position at the pleasure of the Cook County President. The County admits that Zmigrocki was laid off for political reasons, and that Coleman was recommended because she had been a loyal democrat and needed a job. (SF Par. 15). Stroger testified at his deposition that Zmigrocki's name was on a list of 300 employees who were exempt employees and were not protected by the Shakman decree. (Stro. Dep. 26). Stroger indicated that he believed that Zmigrocki was a political appointee, appointed by him and thus could be replaced by him for political reasons. (Stro. Dep. 26). Stroger also explained that the employees on the exempt list all pre-signed letters of resignation, to make clear that they served at the pleasure of the Cook County Board President. (Stro. Dep.

14

103). Zmigrocki admitted at her deposition that she was given a blank resignation letter "several years" before her termination and that she pre-signed the resignation letter at that time, stating at her deposition that she "recall[ed] that [she] signed it years previous." (Zmig. Dep. 69-70). Zmigrocki has not pointed to evidence to call into doubt the evidence showing that she was a politically appointed employee and was exempt from the protections of the Shakman decree. Zmigrocki obtained her job as a political appointee and the evidence shows that she even pre-signed a resignation letter to make it clear that she served at the pleasure of the Cook County Board President. To the extent that Zmigrocki contends that it was unfair to discriminate against her because of political reasons, that issue is not before this court. Zmigrocki has brought an ADEA claim in this case and thus must show discrimination against her based on her age. *See Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610 (1993)(stating that "[i]n a disparate treatment case, liability depends on whether the protected trait (under the ADEA, age) actually motivated the employer's decision").

In addition, even if Zmigrocki could have pointed to sufficient evidence showing that Stroger was incorrect in his belief that Zmigrocki was an exempt employee, that would not necessarily satisfy her burden at the pretext stage. The evidence in the record shows that Stroger acted according to his personal belief that Zmigrocki was an exempt employee. Throughout her filings Zmigrocki repeatedly argues that she was not an exempt employee. (Ans. SJ 10); (R SF Par. 6, 12); (SAF Par. 1-2). However, whether or not Zmigrocki was an exempt employee, or whether it was fair to lay off Zmigrocki is not the ultimate determination that must be decided

in this case. To show a pretext, a plaintiff must show that the employer lied, not simply that the employer made a mistake or acted unwisely. *See Johal v. Little Lady Foods, Inc.*, 434 F.3d 943, 946-47 (7th Cir. 2006)(stating that for the pretext inquiry "it is not [the court's] role to question the wisdom of a company's decisions on how to run its business, only to assure that such decisions are not intended to provide cover for illegal discrimination"). Zmigrocki must point to evidence showing that the given reason by Stroger was merely a pretext to hide an intent to discriminate against Zmigrocki because of her age. Also, as indicated above, the fact that a 54-year-old woman was hired to fill her duties is an indication that no such animus played a role in the decision to terminate Zmigrocki's employment.

The Court also notes that the undisputed evidence shows that when Zmigrocki's employment was terminated, Stroger, the decisionmaker, was 51 years old, and thus was himself in the protected class under the ADEA. The fact that the decisionmaker was himself an older worker makes it less likely that he would have discriminated against older workers and can also be considered in the pretext analysis. Finally, the fact that Zmigrocki was provided with employment by the County for approximately 45 years until she was 67 years old is itself an indication that there was no hidden agenda to oust older workers. Zmigrocki has thus failed to show that the given reason for her termination was a pretext for age discrimination. Based on the above, the County's motion for summary judgment on the ADEA disparate treatment claim is granted.

## II. Title VII Disparate Treatment Claim

The County moves for summary judgment on the Title VII disparate treatment race discrimination claim. A plaintiff bringing a Title VII race discrimination claim seeking to defeat a defendant's motion for summary judgment can proceed under the direct or indirect method of proof. *Coleman v. Donahoe*, 667 F.3d 835, 845 (7th Cir. 2012).

### A. Direct Method of Proof

Zmigrocki contends that she can proceed under the direct method of proof on his Title VII discrimination claim. Under the direct method of proof, a plaintiff must point to direct or circumstantial evidence that "construct[s] a convincing mosaic of circumstantial evidence" and "allows a [factfinder] to infer intentional discrimination by the decisionmaker." *Whitfield v. International Truck and Engine Corp.*, 755 F.3d 438, 443 (7th Cir. 2014)(internal quotations omitted)(stating that "[f]or this mosaic to be convincing, it must directly point to a discriminatory reason for the employer's action and also be directly related to the employment decision"); *Coleman*, 667 F.3d at 863 (stating that "[l]ike a group of Mesopotamian scholars," the court should "work hard to see if a 'convincing mosaic' can be assembled that would point to the equivalent of the blatantly discriminatory statement").

As indicated above, Zmigrocki has failed to show that the County provided inconsistent and shifting explanations. The County's reason that Zmigrocki's employment was terminated for political reasons consistent with her exempt status is

consistent with the evidence in the record. Zmigrocki has failed to point to evidence indicating any intent to discriminate against Caucasian employees. Thus, Zmigrocki cannot proceed under the direct method of proof.

### B. Indirect Method of Proof

Zmigrocki also argues that she can also proceed under the indirect method of proof for his Title VII discrimination claim. Under the indirect method of proof, a plaintiff who is bringing a Title VII discrimination claim must first establish a *prima facie* case. *Cung Hnin v. TOA (USA), LLC*, 751 F.3d 499, 504 (7th Cir. 2014). If the plaintiff establishes a *prima facie* case, "the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for the adverse employment action." *Id.* If the employer provides such a reason, "the burden shifts back to the plaintiff to present evidence that the employer's reason is pretext for unlawful discrimination." *Id.*

### A. *Prima Facie* Case

To establish a *prima facie* case, a plaintiff generally must establish: (1) that he "is a member of a protected class," (2) that he "was meeting his employer's legitimate job expectations," (3) that he "suffered an adverse employment action, and (4) that his "employer treated at least one similarly situated employee not in the plaintiff's protected class more favorably." *Cung Hnin*, 751 F.3d at 504. In a reverse discrimination case, such as the instant action, the first element is modified to

require the plaintiff to establish "background circumstances that demonstrate that a particular employer has reason or inclination to discriminate invidiously against whites or evidence that there is something 'fishy' about the facts at hand . . . ." *Good v. University of Chicago Medical Center*, 673 F.3d 670, 678 (7th Cir. 2012); *see also Phelan v. City of Chicago*, 347 F.3d 679, 685 (7th Cir. 2003)(explaining that "in order to gain the substantial benefits conferred by the use of the *McDonnell Douglas* test, . . . the non-minority plaintiff must be able to plead facts to show why it is likely in this case, that an employer had engaged in such unusual behavior").

Zmigrocki has not pointed to special background circumstances or facts that show that there is anything "fishy" about the facts in this case relating to her termination. Nor has Zmigrocki pointed to evidence indicating any hidden animus against Caucasian employees to satisfy her burden at the pretext stage. In assessing whether the employer's given reason is a pretext the court must focus on "whether the proffered reason is a lie" and "evaluate the honesty of the employer's explanation, rather than its validity or reasonableness." *Cung Hnin*, 751 F.3d at 504 (internal quotations omitted)(quoting *Smiley v. Columbia Coll. Chi.*, 714 F.3d 998, 1002-03 (7th Cir. 2013) and *Hill v. Tangherlini*, 724 F.3d 965, 968 (7th Cir. 2013)). Zmigrocki merely recites certain statistics, which are insufficient on their own to support a disparate treatment claim. Also, as explained above, Zmigrocki's interpretation of such statistics is flawed, and such statistics are not admissible for certain reasons. Based on the above, the County's motion for summary judgment on the Title VII disparate treatment race discrimination claim is granted.

## CONCLUSION

Based on the foregoing analysis, the County's motion for summary judgment is granted in its entirety.

_____
Samuel Der-Yeghiayan
United States District Court Judge

Dated:   February 4, 2015